## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Robert J. Kudla,                                    Civ. No. 12-1000 (DWF/JJK)

       Plaintiff,

v.

Carolyn Colvin,                          **REPORT AND**
Acting Commissioner of                   **RECOMENDATION**
Social Security,

       Defendant.

Meredith E. Marcus, Esq., Daley Disability Law PC; and Edward C. Olson, Esq., Attorney at Law, counsel for Plaintiff.

Ann M. Bildtsen, Esq., Assistant United States Attorney, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

       Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff Robert J. Kudla seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"), who partially denied Plaintiff's application for disability insurance benefits. The parties have filed cross–motions for summary judgment. (Doc. Nos. 32, 38.)  This matter has been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons stated below, this Court recommends that Plaintiff's motion be denied and Defendant's motion be granted.

**BACKGROUND**

**I.    Procedural History**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income on February 6, 2006, alleging a disability onset of October 10, 2005.  (Tr. 127–42.)[1]  The Social Security Administration ("SSA") denied the applications initially and on reconsideration (Tr. 369–71.)  Plaintiff then requested a hearing in front of an Administrative Law Judge ("ALJ"), which was held on March 11, 2008.  (Tr. 40–82.)  The ALJ issued a decision partially favorable to Plaintiff, finding him disabled as of April 21, 2008, but not before.  (Tr. 14–27.)  Plaintiff sought review of the unfavorable portion of the ALJ's decision and the Appeals Council denied the appeal.  (Tr. 4–8.)

On July 9, 2010, Plaintiff filed a complaint in United States District Court.  *Kudla v. Astrue*, No. 10-cv-2973, Doc. No. 1 (D. Minn. July 9, 2010).  Pursuant to joint stipulation of the parties, the Court remanded the matter on April 18, 2011, to the ALJ for further proceedings.  *Kudla v. Astrue*, No. 10-cv-2973, Doc. No. 25 (D. Minn. Apr. 18, 2011).  The Appeals Council provided instructions for the

---

[1]    Throughout this Report and Recommendation, reference to the Administrative Record (Doc. Nos. 28, 29), for this case is made by using the abbreviation "Tr."

specific scope of the ALJ's review on remand.[2]  (Tr. 375–76.)  On October 31,

2011, the ALJ reheard the case.  (Tr. 307–15, 341–68.)  The ALJ again issued a

partially favorable decision, finding Plaintiff disabled as of April 28, 2008, but not

before.  (Tr. 341–68.)

On April 23, 2012, Plaintiff filed the instant action seeking judicial review

pursuant to 42 U.S.C. §§ 405(g) and 1383(c). On December 11, 2012, the

Defendant requested, and the Court granted, a remand to the ALJ to correct an

error in the record.  (Doc. Nos. 13, 17.)  On December 9, 2013, the case was

reinstated.  (Doc. No. 20.)  The parties thereafter filed cross–motions for

summary judgment.  (Doc. Nos. 32, 38.)

## II.    Factual Background

Plaintiff was born on October 21, 1958.  (Tr. 127.)  He has a high school

diploma and previously worked as a materials handler, delivery driver, heavy

equipment operator, and most recently, as a security guard.  (Tr. 333, 191.)

Plaintiff ultimately stopped working on October 10, 2005, due to back pain.

(Tr. 151.)  In his application for disability and supplemental income, Plaintiff

alleged disability due to lower back issues, a shoulder impingement, and

---

[2]    The Appeals Council ordered the ALJ to (1) further evaluate and document the Plaintiff's mental impairment; (2) reevaluate the Plaintiff's residual functional capacity; and (3) obtain additional evidence from a vocational expert by using the revised capacity and limitations to obtain a new assessment of the appropriate jobs available to Plaintiff.  (Tr. 376.)

associated pain.  (Tr. 151.)  Plaintiff was last insured for disability on September 30, 2007.  (Tr. 136.)

## A.    Medical History

The following is a summary of the relevant medical records found in the administrative record before the Court.

On October 3, 2001, Plaintiff injured his back at work and then had corrective surgery in 2002.  (Tr. 290, 292–93.)  In December 2004, Plaintiff returned to his surgeon, Dr. Gary M. Banks, for treatment of chronic back pain.  (Tr. 284.)  Dr. Banks restricted Plaintiff from lifting more than five pounds and from sitting more than thirty minutes.  (*Id.*)  In October 2005, Dr. Banks ordered an MRI, diagnosed Plaintiff with degenerative disc and facet disease, and recommended Plaintiff remain off work for two months.  (Tr. 294, 287.)  In December 2005, Plaintiff returned to Dr. Banks complaining that minimal activity aggravated his back pain.  (Tr. 288.)  Plaintiff requested Dr. Banks recommend a diagnosis of permanent disability; however, Dr. Banks was not willing to make this recommendation.  (*Id.*)  Dr. Banks referred Plaintiff to Dr. Pierre Herard, a pain management specialist.  (*Id.*)  Dr. Herard determined that Plaintiff had severe limitations of sitting, had been disabled since October 9, 2005, and could benefit from certain nerve therapies.  (Tr. 292.)

Around that same time, Plaintiff was treated twice at Core Physical Therapy.  (Tr. 469–70.)  The physical therapist noted that Plaintiff's lack of effort and negative outlook prevented successful treatment.  (Tr. 473.)  Then, on

4

February 23, 2006, Dr. Banks completed a workability report for Plaintiff, recommending the following: limits of three pound for lift/carry and push/pull, a three hour sit/stand/walk limit, and a need to change positions every fifteen minutes.  (Tr. 283.)

In a report filed on May 30, 2006, Dr. James E. Stevenson reviewed Plaintiff's medical records and found that Plaintiff's conditions were not severe enough to warrant a determination of disability.  (Tr. 83–88.)  Later, in reports filed on December 14, 2006, Dr. Charles Grant reviewed additional medical records, finding the Plaintiff's conditions not severe enough to warrant a determination of disability, and affirmed Dr. Stevenson's findings.  (Tr. 89–94.)

On September 20, 2006, Plaintiff received a behavioral health examination by Dr. Deborah Fisher (Psy.D., L.P).  (Tr. 257–60.)  Dr. Fisher noted that Plaintiff's energy and concentration levels decreased as the pain increased, but that Plaintiff seemed alert and oriented and did not have memory problems.  (Tr. 258–59.)  Dr. Fisher diagnosed Plaintiff with a pain disorder associated with psychological and medical factors and with a Global Assessment of Functioning ("GAF")[3] score of 45; she recommended Plaintiff use stress management to self–manage the pain.  (Tr. 259–60.)

---

[3]     *See* Am. Psychiatric Ass'n, *Diagnostic & Statistical Manual of Mental Disorders* 30—32 (4th ed. 1994).  The GAF scale is used to measure an individual's overall level of functioning concerning psychological, social, and occupational functioning at the time of evaluation. A GAF of 31 to 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in

(Footnote Continued on Next Page)

In October 2006, a series of medical professionals at Medical Advanced Pain Specialists ("MAPS") treated Plaintiff for pain.  (Tr. 251–76.) The staff noted that Plaintiff had pain in his lower back that radiated down his legs, and that this pain had both physical and psychosocial–emotional causes.  (Tr. 266.)  On July 24, 2006, Dr. David O. Nelson observed Plaintiff to have frequent vocalizations of pain, muscle tenderness in his lower back, and pain associated with spine rotation and movement, but was alert and oriented.  (Tr. 261–67.)

At the end of his treatment at MAPS in October 2006, the treating staff challenged Plaintiff's claim of complete debilitation.  (Tr. 252.)  The MAPS team cited Plaintiff's participation in daily programing at the MAPS facility for periods of four hours at a time and his ability to drive twenty miles each way to the program. (*Id.*)  Further, the team recommended that Plaintiff exercise in the MAPS pool and that he practice stress management to control the psychosocial factors of the pain. (*Id.*)  In a follow–up session on December 5, 2006, Dr. Murray J. McAllister (Psy.D., L.P.) noted that Plaintiff had anger towards the general MAPS diagnosis, in particular, the finding that Plaintiff could lift more than the three pounds to which Dr. Banks limited him.  (Tr. 461.)  Dr. McAllister observed Plaintiff to be fully oriented, well dressed and groomed, and logical in his thoughts, but noted

(Footnote Continued from Previous Page)
several areas"; a GAF of 41 to 50 indicates "[s]erious symptoms" or "any serious difficulty"; a GAF of 61 to 70 indicates "some mild symptoms" or "some difficulty"; and a GAF of 71 to 80 indicates "transient" symptoms or "expectable reactions to psychological stressors."

he was angry, anxious, disjointed in his speech, and presented poor insight. (Tr. 462.)  Further, Dr. McAllister observed that Plaintiff had "catastrophized fear and avoidance" towards his pain that decreased his confidence in his work abilities.  (*Id.*)  Dr. McAllister presented Plaintiff with a plan to reduce this anxiety, but Plaintiff did not accept this treatment offer.  (*Id.*)

On December 14, 2006, Dr. Banks discussed an exploratory surgical procedure, a discography, to discover the exact source of Plaintiff's pain and to determine whether fusion surgery was a treatment option; it was left that Plaintiff would decide if he wished to have a discogram and that Plaintiff would follow-up with Dr. Banks if he did.  (Tr. 281.)  On April 5, 2007, Dr. Banks treated Plaintiff for increasingly severe back pain, observed Plaintiff had some weakness in his legs, and noted that fusion surgery would now not likely improve Plaintiff's overall functionality.  (Tr. 280.)  Further, Dr. Banks noted that he would not need to see the patient again unless Plaintiff requested the exploratory discography.  (*Id.*)

On January 8, 2007, Dr. Sherif A. Roushdy treated Plaintiff and prescribed Percocet for pain and Zanaflex as a muscle relaxer.  (Tr. 475.)  Dr. Roushdy recommended a discogram to explore the cause of the pain; however, the Plaintiff rejected the discogram.  (*Id.*)  Approximately a year later, on February 13, 2008, Dr. Roushdy examined Plaintiff and noted deteriorating signs in the lumbar spine portion of the exam.  (*Compare* Tr. 477 (noting on February 13, 2008, a positive Patrick test on the left and positive bilateral straight-leg raise with the addition of discogenic pain syndrome, lower back inflammation, and

7

myofascial pain to the clinical impression report), *with* Tr. 475 (noting on January 8, 2007, a negative Patrick sign, negative straight-leg raise, and only degenerative disc disease and insomnia in the clinical impression report).)[4]  Over a year later, on June 11, 2009, Dr. Roushdy advised Plaintiff on a treatment plan that included narcotic medication, neural stimulation, epidurals, and physical therapy, but Plaintiff seemed reluctant to comply.  (Tr. 478.)

### III.    Testimony at Administrative Hearing

### A.    Plaintiff's Testimony

Plaintiff testified to the following at a hearing before the ALJ on March 11, 2008.  (Tr. 42–64.)  Plaintiff testified that he is still driving, but only for an hour at a time and cannot comfortably wear a seatbelt.  (Tr. 46–47.)  Plaintiff stated he could walk for about an hour but would then need to stay off his feet for several hours.  (Tr. 56–57.)  Plaintiff further testified that he had discomfort in his right shoulder dating back to the 1980's.  (Tr. 49.)  During questioning by his attorney, Plaintiff testified that, when he is in severe pain, he cannot focus on reading or the internet.  (Tr. 58–59.)  He stated that he did not take pain medications because he worried about developing reliance on them.  (Tr. 51.)  Plaintiff testified he can cook using a stovetop but that putting food in the oven can cause

---

[4]      A Patrick test is used to determine the presence or absence of lower back issues.  A positive test is an indicator of lower back and/or hip disease. *Stedman's Medical Dictionary* 1806 (27th ed. 2000). A straight-leg raise, also known as Lasegue's sign, indicates issues with the nerves in the lower back.  A positive straight-leg indicator reflects nerve irritation.  *Id.* at 1638.

discomfort.  (Tr. 53.)  Further, Plaintiff acknowledged his reluctance to undergo the discogram was due to fear of the possible complications of surgery.  (Tr. 61–62.)

Dr. Kathryn Hiduchenko questioned the Plaintiff about his use of pain medications.  (Tr. 65.)  Plaintiff testified that he takes Advil three times per week and no more than that because the medicine bothers his stomach.  (*Id.*)  Further, Plaintiff testified that he had never received an epidural and that he had not sought emergency care for the pain.  (Tr. 66.)

At the hearing before the ALJ on October 31, 2011, Plaintiff testified as follows.  (Tr. 513–34.)  He completed high school, and since then he held several jobs.  (Tr. 519–20.)  He injured himself while working ten to twelve hours a day as a heavy equipment operator. (Tr. 520.)  He received workers compensation and had corrective surgery on February 12, 2002.  (Tr. 521–22.)  Plaintiff stated that he began work as a security guard on April 30, 2005, until Dr. Banks recommended he stop working.  (*Id.*)  Plaintiff has not worked or received any income since October 10, 2005.  (Tr. 518.)  Plaintiff testified that he lives alone and subsists on his 401(k) savings and his $150,000 workers compensation settlement.  (Tr. 518–19.)

Plaintiff testified that his pain levels fluctuate daily.  (Tr. 531–33).  On good days, he can walk around the block and exercise in a pool.  (Tr. 533.)  On bad days, he would need to lay down and take a hot bath or shower for nearly four hours to compensate for the pain.  (Tr. 526.)  These bad days occurred four to

six times per month and interfered with the Plaintiff's ability to sleep.  (Tr. 527.)

Further, he stated that he was forced to lay down to operate a computer and that

he had to get up and move around if he sat for more than twenty minutes.

(Tr. 527–28.)  Plaintiff also testified that he could do laundry and shop for light–

weight groceries if he was not having a bad day, but that his son stops to help

him with household cleaning and delivers heavier grocery items.  (Tr. 528–29.)

## B.    Medical Expert Testimony

Dr. Kathryn Hiduchenko testified as a medical expert at the March 11,

2008 hearing.  (Tr. 64–72.)  Dr. Hiduchenko testified that Plaintiff did not meet or

equal the 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04a listing for back pain.

(Tr. 14, 69.)  Further, she stated she thinks Plaintiff could do sedentary work with

occasional ten pounds lift/carry, and less than ten pounds lift/carry more

frequently, but that certain restrictions would apply.  (Tr. 70.)  For instance, in her

opinion Plaintiff should be limited in his sit/stand time and be allowed to change

positions frequently, he should not work at heights or frequent stairs, and should

only occasionally stoop, crouch, or bend.  (*Id.*)  Dr. Hiduchenko testified that

different individuals will experience pain from conditions differently and that the

Plaintiff may have increased perceptions of pain.  (Tr. 71.)  Further, she testified

that there was no sign that Plaintiff was malingering or making up the pain.

(Tr. 71–72.)

Dr. Frank J. Indihar, an internist, testified as a medical expert at the

October 31, 2011 hearing.  (Tr. 534–37.)  Dr. Indihar testified that Plaintiff's

medical records indicate a diagnosis of "degenerative disc disease . . . shoulder impingement syndrome, and . . . pain disorder."  (Tr. 534.)  Dr. Indihar concluded that the severity of the diagnoses does not qualify Plaintiff under the spinal disorder listings of 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.04, nor does it qualify under § 1.02 major dysfunction of the joint, although he could not comment on the pain disorder since this was outside his specialty.  (Tr. 535–37.)  Dr. Indihar recommended a sedentary residual functional capacity ("RFC"), frequent position changes, and limited overhead reaching for the Plaintiff.  (Tr. 536.)

## C.   Vocational Expert's Testimony

Ms. Julie Hearn testified as a vocational expert ("VE") at the hearing on October 31, 2011.  (Tr. 537–545.)

The ALJ provided the VE the following hypothetical to assess whether a similar plaintiff could perform any of this Plaintiff's past jobs:

> Discussing an individual for this entire claim period . . . 46 to 53 years of age . . . with of course a 12th grade education, and of course past work as set out in the report . . . doctor gave limitations essentially at a sedentary level, both as to lifting and time on feet . . . that essentially means on [his] feet two out of eight can be spread throughout the eight hours, and sitting up to six hours out of eight, and again, that can be spread throughout that entire time period. He did preclude him from working with ladders, ropes, and scaffolds, no more than occasionally using ramps or stairs, no more than occasional stooping, kneeling, crouching, or crawling. The doctor precluded him from working at unprotected heights, or around other hazards, would allow a change of position at will, sometimes of reference to the phrase sit/stand option, but that concept, he shouldn't more than occasionally do overhead reaching on the right. And additionally from a non–exertional perspective, limited essentially to routine repetitive tasks, and unskilled work. With those

limitations, in your opinion, could a person with those do any of the
past jobs?

(Tr. 538–39.)  The VE testified that this hypothetical person could not perform
any of Plaintiff's past jobs.  (Tr. 539.)

When asked if there were other jobs such a hypothetical person could do,
the VE testified there was unskilled work that would make sense for the
hypothetical person.  (*Id.*)  Further, the VE modified her findings to account for
the constrained sit/stand limitations by reducing the total number of jobs available
by twenty–five percent.  (Tr. 540.)  The VE concluded that there were 5,000
sedentary or sit–down assembly jobs, 1,500 sedentary inspector jobs, and 3,000
sedentary or sit–down packager jobs.  (Tr. 540–41.)  The ALJ then proposed an
additional limitation of occasional bend or stoop with limited stairs.  (Tr. 541.)
The VE opined that this limitation would have very little effect on her assessment.
(*Id.*)

The Plaintiff's attorney then inquired how much off–task time could be
tolerated in these positions, to which the VE responded that five to ten percent of
the hypothetical person's time could be spent off–task, no matter what the source
of the distraction.  (Tr. 542–43.)  The occasional unscheduled break of ten
minutes, but less than twenty minutes, would also be acceptable.  (Tr. 544.)  The
Plaintiff's attorney also inquired how many days such a hypothetical person could
be absent from work.  (Tr. 543.)  The VE responded that two days a month is the
typical threshold in these types of jobs.  (*Id.*)

**IV.    The ALJ's Findings and Decision**

On December 9, 2011, the ALJ issued a partially favorable decision

concluding that Plaintiff was disabled within the meaning of the Social Security

Act on and after April 21, 2008, but not before.  (Tr. 323–36.)  The ALJ followed

the five–step evaluation set out in the Code of Federal Regulations.  (*Id.*); *see* 20

C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

At step one, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since the alleged onset date.  (Tr. 323.)  At step two, the ALJ

found that "[Plaintiff] has the following severe impairments: degenerative disc

disease with history of partial hemilaminectomy with chronic low back pain and

discogenic pain syndrome; right shoulder impingement syndrome; and pain

disorder associated with both psychological factors and a general medical

condition."  (*Id.*)

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed

impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (*Id.*)  The ALJ

concluded that Plaintiff had "mild restriction in activities of daily living, mild

difficulties in maintaining social functioning, moderate difficulties in maintaining

concentration, persistence or pace, and no episodes of decompensation that

have been of extended duration."  (Tr. 324.)  Additionally, the ALJ concluded that

the "C" criteria of the 20 C.F.R. Part 404, Subpart P, Appendix1 §§ 12.02, 12.04

listings were not met.  (*Id.*)

At step four, the ALJ found that:

[S]ince October 10, 2005, the [Plaintiff] has the residual functional capacity to perform sedentary work . . . lifting no more than 10 pounds at a time, standing or walking for a total of no more than two hours in the course of an 8–hour workday, and sitting for a total of no more than six hours in the course of an 8–hour workday. However, the [Plaintiff] is subject to all of the following, additional, work–related, functional limitations: he is unable to perform work that involves climbing ladders, ropes or scaffolding; he is able to perform work that involves no more than occasional climbing of ramps or stairs; he is able to perform work that involves no more than occasional stooping, kneeling, crouching, or crawling; he is unable to perform work at unprotected heights or around hazardous machinery; he is unable to perform work that does not accommodate a "sit/stand option," or that does not otherwise allow for a change position at will; that with respect to his right upper extremity, [Plaintiff] is able to perform work that involves no more than occasional reaching overhead; and claimant is limited to performing unskilled work that involves no more than routine, repetitive tasks and instructions.

(Tr. 326–27.)  The ALJ made these findings after considering all of Plaintiff's

symptoms and comparing them with the objective medical evidence and other

evidence.  (*Id.*)  The ALJ also concluded that although Plaintiff's impairments

"could reasonably be expected to cause the symptoms alleged, . . . [Plaintiff]'s

statements concerning the intensity, persistence and functionally limiting effects

of the symptoms alleged are not generally credible to the extent that they are not

generally consistent with [the record]."  (Tr. 328.)  With respect to this finding, the

ALJ relied on Dr. Indihar's testimony and the corroborating testimony of the other

non–examining physicians, Dr. Hiduchenko, Dr. Stevenson, and Dr. Grant.

(Tr. 328.)  The ALJ gave little weight to the disability conclusions of the treating

physicians Dr. Banks and Dr. Herard because they were not generally consistent

14

with the record.  (Tr. 329.)  The ALJ then concluded that, "[s]ince October 10, 2005, [Plaintiff] has been unable to perform any past relevant work."  (Tr. 333.)

However, at step five, the ALJ concluded that prior to April 21, 2008 "there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed" and was therefore not disabled.  (Tr. 333–34.) Specifically, the ALJ found that Plaintiff had the RFC to "perform the full range of sedentary work" even considering non-exertional limitations.  (Tr. 334.)  But the ALJ went on to conclude that, primarily due to the Plaintiff's increasing age, as of April 21, 2008, there were no jobs that the Plaintiff could perform and he was therefore disabled at that time.  (Tr. 333, 335.)

## DISCUSSION

### I.    Standard of Review

Congress has prescribed the standards by which Social Security disability benefits may be awarded.  Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in

any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Review by this Court of the Commissioner's decision to deny disability benefits to a claimant is limited to a determination of whether the decision of the Commissioner is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006).  "There is a notable difference between 'substantial evidence' and 'substantial evidence on the record as a whole." *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir. 1987) (quotation omitted); *see also Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001) (quoting *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998)). "'Substantial evidence on the record as a whole,' . . . requires a more scrutinizing analysis."  *Gavin*, 811 F.2d at 1199 (quotation omitted).  "The substantial evidence test employed in reviewing administrative findings is more than a mere search of the record for evidence supporting the [Commissioner's] findings."  *Id.* In reviewing the administrative decision, "'[t]he substantiality of [the] evidence must take into account whatever in the record fairly detracts from its weight.'"  *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

In reviewing the record for substantial evidence, the Court may not substitute its own opinion for that of the ALJ.  *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).  The Court may not reverse the Commissioner's decision merely because evidence may exist to support the opposite conclusion.  *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citation omitted); *accord Woolf*, 3

16

F.3d at 1213 (concluding that the ALJ's determination must be affirmed, even if substantial evidence would support the opposite finding).  The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

The claimant bears the burden of proving his or her entitlement to disability insurance benefits under the Social Security Act.  20 C.F.R. § 404.1512(a); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).  Once the claimant has demonstrated that he or she cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second, that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

## II.    Analysis of the ALJ's Decision

Plaintiff raises four issues in support of his motion for summary judgment. First, Plaintiff argues the ALJ erred in finding that Plaintiff's pain disorder did not meet or equal a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Doc. No. 33, Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 7–15.)  Second, Plaintiff argues the ALJ gave improper weight to the treating physician's opinion of Plaintiff's physical limitations.  (*Id.* at 15–19.)  Third, Plaintiff argues the ALJ erred in discrediting the Plaintiff's subjective statements of pain and mental

impairments.  (*Id.* at 19–22.)  And fourth, Plaintiff argues the ALJ lacked

substantial evidence to support the finding at step five that Plaintiff could perform

other jobs.  (Doc. No. 40, Pl.'s Reply Mem. in Supp. of Mot. for Summ. J. ("Pl.'s

Reply") 9.)

In response, Defendant contends that the record as a whole supports each

step of the ALJ's determination.  (Doc. No. 39, Def.'s Mem. in Supp. of Mot. for

Summ. J. ("Def.'s Mem.") 5–19.)  Particularly, Defendant asserts that substantial

evidence supports the finding that Plaintiff did not meet a listing, the weight

assigned to the various medical opinions, the selection of severe limitations in

the RFC, and the instructions given to the VE at step five.  (*Id.*)

### A.   Whether the ALJ erred when finding that Plaintiff's pain disorder did not meet or equal Listing 12.02 or 12.04.

Plaintiff argues that the ALJ's finding at step three was not supported by

substantial evidence on the record as a whole.  In order to meet the paragraph B

criteria for Listing 12.02 and 12.04, the mental impairment must satisfy at least

two of the following: "1. Marked[5] restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in

maintaining concentration, persistence, or pace; or 4. Repeated episodes of

---

[5]     Marked is a "standard for measuring the degree of limitation, it means more than moderate but less than extreme.  A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00 (C).

decompensation, each of extended duration." 20 C.F.R. Part 404, Subpart P, App. 1 §§ 12.02(B),12.04(B).  The ALJ found that Plaintiff had mild restrictions in daily living and social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation of extended duration.  (Tr. 324.)  Plaintiff contends the ALJ's finding does not properly consider the record as a whole because it ignores evidence suggesting the pain disorder had a disabling effect on Plaintiff.  (Pl.'s Mem. 7–15.)

Plaintiff details several parts of the record that detract from the ALJ's decision at step three.  (Pl.'s Mem. 8–10.)  This Court, however, will not reverse an ALJ's decision when it is supported by substantial evidence, even when there is substantial evidence to support a different outcome.  *Stormo v. Barnhart*, 377 F.3d 801, 805 (8th Cir. 2004).  To support his position that Plaintiff did not qualify for a listing under sections 12.02 or 12.04, the ALJ cited consistent medical observations throughout the record that found Plaintiff was alert, aware, and able to concentrate.  (Tr. 324–26) (citing ten separate, supporting instances in the record).  Notably in 2008, Dr. Roushdy observed that, despite Plaintiff's inability to fall and stay asleep, Plaintiff denied memory lapses or a decreased ability to concentrate.  (Tr. 476.)  Further, the ALJ's decision to classify Plaintiff's pain disorder as mild to moderate is supported by a large portion of the record.  There are, however, portions of the record that conflict with this finding.  For example, the two psychological exams done at the MAPS center that diagnosed Plaintiff with a pain disorder detract from the evidence of a mild limitation.  (Tr. 257–60,

19

461.)  The exams showed Plaintiff had high perceptions of pain that gave him severe anxiety toward those activities that exacerbated his symptoms.  (Tr. 462.)  However, the MAPS team, evaluating Plaintiff holistically, disputed that Plaintiff was completely debilitated and challenged his perceptions of pain.  (Tr. 252.)  Based on the record as a whole, this Court concludes that the ALJ had substantial evidence to support his decision that Plaintiff did not meet one of the 20 C.F.R., Part 404, Subpart P, Appendix 1 listings.

Plaintiff also argues that his GAF score, which was below 50, is strong evidence detracting from the ALJ's step-three finding.  But GAF scores are not determinative of a severe disability.  *Jones v. Astrue*, 619 F.3d 963, 973–74 (8th Cir. 2010) ("[A]n ALJ may afford greater weight to medical evidence and testimony than to GAF scores when the evidence requires it."  (internal citation omitted)) (evaluating a GAF score between 40 and 50).  An ALJ, however, may not disregard a GAF score in his analysis.  *Conklin v. Astrue*, 360 Fed. App'x 704, 707 (8th Cir. 2010) (citing *Pate–Fires v. Astrue*, 564 F.3d 935, 944–45 (8th Cir. 2008)).  Here, in his opinion, the ALJ addresses Plaintiff's GAF score at some length.  (Tr. 333.)  He ultimately concludes that, because of Plaintiff's failure to cooperate with physical therapy, take pain medications, or undergo other treatments, Plaintiff is not as limited as the GAF score suggests.  (*Id.*)  Because the ALJ based his conclusion on substantial evidence, his assigning less weight to the GAF score was not error.

This Court acknowledges that the record as a whole contains some evidence that could both support and detract from a finding that Plaintiff had disabling pain.  But because substantial evidence in the record supports the ALJ's conclusion, this Court recommends deferring to the ALJ's finding that Plaintiff did not meet a listing under the regulations.  *See Mitchell*, 25 F.3d at 714.

### B.   Whether the ALJ properly weighed the testimony of treating and non-treating medical professionals.

When determining the weight of evidence on the record, the opinions of treating physicians are given "controlling weight" if "well supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted).  However, a "treating physician's opinion does not automatically control, since the record must be evaluated as a whole." *Id.* (quotation omitted).  An ALJ may give substantial weight to a state medical consultant "along with medical evidence as a whole."  *Casey v. Astrue*, 503 F.3d 687, 694 (8th Cir. 2007).  Here, the ALJ largely discredited Dr. Banks's workability report and Dr. Herard's finding of complete disability, because they were inconsistent with the record as a whole.[6]  (Tr. 329–32.)

---

[6]   *See* 20 C.F.R. § 404.1503(b); *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination.").

The ALJ found the treating physicians' opinions were not credible based on the results of medical tests indicating Plaintiff had normal motion, strength, and flexibility, and on Plaintiff's abstention from pain medications.  (*Id.*)  The ALJ gave great weight to the four, non-treating physicians' testimony, because their findings were more strongly supported by the objective medical tests and the record as a whole.  (Tr. 328–29.)  The ALJ further supported his determination on the weight to be given to medical testimony by citing the treating professionals at MAPS, who challenged Dr. Bank's assessment of Plaintiff's lifting abilities and the general finding of total disability.  (Tr. 331 (citing Tr. 252).)  After reviewing the record as a whole, this Court finds there was substantial evidence to discredit the two treating physicians' findings of total disability and to rely on the opinions of the other treating and non-treating physicians.

### C.     Whether the ALJ erred in discrediting Plaintiff's testimony as to subjective statements of pain and mental impairments.

When determining the credibility of a Plaintiff's subjective complaint, the ALJ must consider evidence of the following factors: (1) the Plaintiff's daily activities; (2) the duration, frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  The ALJ must consider, but does not have to discuss, each factor in his decision.  *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007) (citing *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004)).  The ALJ may discredit subjective

complaints, but "[w]hen rejecting a [Plaintiff]'s complaints of pain . . . the ALJ must make an express credibility determination detailing his reasons for discrediting the testimony."  *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991) (citing *Ricketts v. Sec'y of Health & Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990).  "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination."  *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) (citing *Russell v. Sullivan*, 950 F. 2d 542, 545 (8th Cir. 1991)); *see also Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992) (stating that if the record could support more than one reasonable conclusion, the reviewing court should affirm the Commissioner's reasonable conclusion).

Here, the ALJ's express credibility finding acknowledged the *Polaski* factors when evaluating Plaintiff's complaints of pain, and focused on the Plaintiff's failure to manage his symptoms as evidence to discredit Plaintiff's claim.  (Tr. 327, 332–33.)  Despite being prescribed more powerful medications, Plaintiff only took Advil three times a week for the pain.  (Tr. 475, 65.)  "A lack of strong pain medication is inconsistent with subjective complaints of disabling pain."  *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994); *see also Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000); *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992); *Benskin v. Bowen*, 830 F.2d 878, 881–82 (8th Cir. 1987). Plaintiff's unwillingness to comply with substantive treatment recommendations for his pain supports the inference that the pain was not debilitating but rather

had a mild to moderate effect on his ability to function.[7]  After reviewing the

record as a whole, this Court finds the ALJ's credibility determination is

supported by substantial evidence.

### D.      Whether the ALJ erred in his step-five finding.

Plaintiff contends the ALJ erred by not including limitations for mental

impairments in his RFC.  An ALJ has a duty to fairly and fully develop the record.

*Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).  When deciding a claimant's

RFC, the ALJ must consider the evidence in the record, including the medical

records, physicians' observations, and the Plaintiff's own description of his

limitations.  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002)

(quotation omitted).  The medical records show that Plaintiff was often alert and

able to effectively communicate with his treating physicians, and he was not in

the severe pain that would prevent him from concentrating.  (*E.g.*, Tr. 476; *see

also* Tr. 324–26.)  Further, the treating physicians at MAPS found Plaintiff to be

more capable than he believed himself to be and challenged his conception of

complete disability.  (Tr. 252.)  Lastly, Plaintiff testified that, apart from the

occasional "bad day," he was able to manage his pain by changing positions and

---

[7]      (*E.g.*, Tr. 473 (noting Plaintiff's attitude prevented successful physical therapy); Tr. 478 (noting Plaintiff was reluctant to comply with treatment plan to reduce pain); Tr. 462 (noting Plaintiff rejected stress management treatment plan to reduce psychosocial aspects of the pain).); *see generally* 20 C.F.R. §§ 404.1530, 416.930.

could undertake some activities of daily living.  (Tr. 526–34.)  This Court finds the

ALJ's RFC determination is supported by substantial evidence.

Plaintiff also argues that the ALJ's ultimate step-five finding is not

supported by substantial evidence because of a faulty hypothetical.  A VE's

testimony will not constitute substantial evidence unless the hypothetical

question posed accounts for all of relevant impairments.  *Baker v. Apfel*, 159

F.3d 1140, 1144 (8th Cir. 1998).  An ALJ, however, does not have to include in

the hypothetical those impairments that are not supported by the record as a

whole.  *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993).

The ALJ supported his decision at step five with the testimony of the VE.

(Tr. 335.)  The ALJ did not expressly include reference to pain in his RFC or in

his hypothetical to the VE.  (Tr. 326–27; Tr. 538–39.)  However, the RFC

explicitly included a finding that Plaintiff could only conduct unskilled labor, and

the hypothetical to the VE referenced both unskilled labor and Plaintiff's non–

exertional limitations.  (Tr. 326–27; Tr. 538–39.)  Plaintiff suggests that an

instruction of "unskilled" does not adequately account for his concentration

issues.  (Pl.'s Mem. 12 (citing *Taylor v. Comm'r of Soc. Sec.*, No. 10-cv-12519,

2011 WL 2682682, *7 (E.D. Mich. May 17, 2011)).)  However, the case cited by

Plaintiff also says that "there is no bright-line rule requiring remand whenever an

ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a

moderate limitation in concentration."  *Taylor*, 2011 WL 2682682 at *7; *see*

*generally* SSR 85–15 ("Mental impairments are generally considered to be nonexertional . . . .").

Here, the ALJ properly discounted the severity of the pain disorder and properly discredited Plaintiff's subjective allegations of pain.  The ALJ did find Plaintiff had a pain disorder that resulted in "mild restriction in activities of daily living, mild difficulties in maintaining social functioning, [and] moderate difficulties in maintain concentration [and] persistence or pace . . . ."  (Tr. 323–24.)  But the ALJ concluded the pain disorder did not severely affect Plaintiff's RFC.  (Tr. 326–27.)  The ALJ properly excluded non-exertional limitations due to pain in the hypothetical because he had previously concluded Plaintiff's pain was not severe.  *Brachtel v. Apfel*, 132 F.3d 417, 421 (8th Cir. 1997) (affirming a hypothetical that referenced the ability to do only simple, routine, repetitive work, which does not require close attention to detail); *see Miller v. Shalala*, 8 F.3d 611, 613–14 (8th Cir. 1993) ("The ALJ did not include intense or severe pain in the hypothetical because substantial evidence on the record contradicts the allegation of severe pain."); *Faint v. Colvin*, No. 4:13–CV–591 NAB, 2014 WL 2765144, *14–15 (E.D. Mo. June 18, 2014) (distinguishing *Newton v. Chater*, 92 F.3d 688 (8th Cir.1996) (concluding that a moderate limitation in concentration is properly accounted for when substantial evidence shows plaintiff's limitations in concentration does not impose limitations beyond the performance of unskilled work)).  In other words, the hypothetical was adequate because it included

reference to all the severe impairments listed in the RFC that were supported by

substantial evidence in the record.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment (Doc. No. 32), be **DENIED**,

2.    Defendant's Motion for Summary Judgment (Doc No. 38), be

**GRANTED**; and

3.    This case be **DISMISSED WITH PREJUDICE**, and judgment be

entered.

Date: October 31, 2014

 _s/ Jeffrey J. Keyes_____
JEFFREY J. KEYES
United States Magistrate Judge


Under D. Minn. Loc. R. 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **November 14, 2014** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within **fourteen days** after service thereof.  A judge shall make a de novo review of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.